Before we get to our cases this morning, we have a pleasant occasion when we admit, subject to a vote of course, to bar one of our law clerks. In fact, one of my law clerks. I am the movant and I will therefore move the admission of Andrew Thomas Dufresne, who is a member of the bar in good standing of the highest court of Wisconsin. I have knowledge of his credentials and I'm satisfied that he possesses the necessary qualifications. That is the I will supplement that by saying that Andy's worked for me for a year and a half and counting. He's a terrific person to work with. He's very bright. He has rendered excellent service and he is surely destined to be a superb member of the bar. So, as movant, I am not therefore presiding to deal with this motion and I would therefore transfer it to Judge Bryson for whatever disposition the panel considers appropriate. Judge Clevenger? I'm delighted to vote in favor of the motion and I hope that you'll have great success in law practice and that we will see you here many times in the future behind either one of these two tables. I join Judge Clevenger and therefore, Judge Lurie, your motion is granted and the applicant will be admitted. Now, if the applicant would please stand and face the clerk to be sworn. We now proceed to our normal business. We have four cases on the calendar this morning. Three patent cases from district courts and government employee case from the Merit Systems Protection Board. Our first case is Allflex versus Avid Identification Systems, 2011-16-21. Mr. Taylor. Before we want to start the time, could I ask a question about confidential material? I didn't want to use the time. Mr. Taylor, a lot of the materials in your brief are marked as confidential, including a passage from the very agreement that is the source of the question as to whether we have seriously pressed a claim of confidentiality with respect to that material. On behalf of Avid, we don't. Allflex is not officially present, although I believe their attorneys are in the courtroom. I don't know whether they would press that confidentiality. Well, there's a lot of material that's marked confidential and in these situations, we frequently ask the parties to tell us if they're, to use the words of the great John McEnroe, you can't be serious. But it does strike me that it would be difficult to write an opinion in this case while respecting all of the claims of confidentiality, so I'm asking for a blanket waiver from you and from your, well, at least with empty chair that's over there, as to whether this is something that we can regard as not a problem if we end up writing an opinion in this case. On behalf of Avid, I can agree to that, Your Honor, on behalf of Avid. How do we find out about your adversary who hasn't chosen to show up today? He's actually sitting right here, if you would like to ask him. He can respond to that question of confidentiality. Your Honor, we would be agreeable. I assume that the court warrants waiver with respect to that particular paragraph. Well, you know, there's a whole lot else that's marked as well, some of which is technical material, which goes well beyond that and would make writing an opinion an exercise in navigating a minefield, and that isn't something that we normally find compatible with trying to write a published public opinion. So what we're looking to you for is to identify those sections that really matter as opposed to those sections that may have been designated as confidential in the proceeding before the district court, but are not seriously asserted as being important enough to warrant our not commenting on them in an opinion. Your Honor, will you give us five days to work this out and submit something to you? That'll be fine. That'll be fine. Thank you, Your Honor. You understand where we're going with this and what our objective is. If there's something that's clearly a trade secret or needs to be protected, fine. But if it's just something that happens to have been marked as confidential in the district court, that's not something that we would enjoy having to try to work around. If I may, Your Honor, at the district court level, during the summary judgment proceedings, at the public hearings, some of this technology was, in fact, discussed. We just were obligated under the protective order to mark the brief as such. Very good. Please proceed with your argument, Mr. Taylor. Thank you, Your Honor. This case comes from a district court ruling that relied upon a highly rigid and narrow construction of the claims that, in turn, led to a finding of non-infringement and inequal conduct. I do plan to spend the bulk of my time on those two issues. Let me ask you before you get there. Yes. First question out of the box is, is this a final judgment? Because, and I focus for this purpose on the inequitable conduct claim, is that claim final? Normally, a claim with this posture, i.e. just a materiality ruling without a ruling on the entire claim of inequitable conduct, would not be final. Right. But here, we contend that it is final because of the special circumstances in this case where the parties agreed during settlement that this issue could be appealed. In fact, there is a portion of the settlement that's been structured that is contingent. Well, I guess the question of whether the issue has been, whether the claim has been resolved, that is to say, has become final, depends on whether the district court has entered an order which disposes of this claim. Has this claim been disposed of? And if so, what was the disposition of the claim? First, upon summary judgment, the court found that there was materiality. That's right. One of the elements of inequitable conduct was found against your client. But what was the disposition of the claim, not of particular subsidiary issues, but the claim? The claim would have been wrapped up in the final judgment in which the court issued a judgment saying that the case was ready for final disposition. Right, and therefore, who won? Let me put it that way. Who won the inequitable conduct claim? You or your opponent? Don't tell me about one issue was decided against you and so forth. In order for that issue to be final, somebody has to have won. There has to be a disposition. Now, if, in fact, that issue is still, the claim is still open because of the status of the materiality claim, then no one has won, but then we don't have a final judgment. No one has won, but I disagree with the premise that someone has to win in order for there to be a final judgment. There are cases in which partial summary judgment has been accepted by this court under certain rare circumstances. Well, the claim could be dismissed, in which case no one wins, but the claim is gone, and that would therefore not impede final judgment. This wasn't dismissed. Was it the inequitable conduct claim? It wasn't dismissed. But, again, our theory is that the final judgment rule, the purpose of the final judgment rule is to prevent repetitive appeals, and it's to be applied to the Supreme Court in a practical way, not a technical way. And here, there is finality because of the nature of the settlement agreement. What you're arguing is that parties can, together, confer finality on a non-final judgment, and I heard you say that in your first response to Judge Bryson. Do you have a case that supports that proposition? You see that there's a 54B procedure that allows the United States District Court to confer finality on a non-final judgment. In fact, this judge could have done that, could have parked, if you will, intent, and sent materiality afterwards. That didn't happen. So I need from you a citation to authority for the proposition that private parties can confer finality on an otherwise non-final judgment. I don't have a case where that's happened before, and I don't have a case either in the circuit or in the Ninth Circuit. Do you think it would be a good idea? I'm sorry? Do you think it would be a good idea as a matter of judicial administration? That's a good question, and I think from the perspective of litigants, it would be, because I think that what it would do, like the rule in Nixon and in Haven Realty that sort of opened this door, is promote settlement. Because there are many times when you have parties that are trying to settle a case. One party has been fairly successful or very successful, and the other party feels aggrieved and wishes not to settle because they feel like there's going to be a cloud hanging over their patents or some other right. And this is a good example of this. The problem with that whole line of argument, it seems to me, and I understand why you want it, but we look at it from a different perspective. And the problem for us is that if what you end up with at the end of the day is an issue that only matters to one side, and that's the situation we've got here, we end up with an empty chair. And we end up with a one-sided appeal, and that's not the way the system is supposed to work, and it makes it very hard for us to have complete confidence in the correctness of our disposition of the case when we've only heard from one side. So the problem with saying, well, we'll take up an issue that we care about, but the other side doesn't care about because they've been settled out of the case, they have no more exposure, is that we produce exactly the situation that we have here today. And it is not good, I submit to you, for the system to have that happen frequently, and it's happened now twice involving the same party. This is not a good thing from our perspective, however attractive it may be to the litigants. And obviously, the courts have a much better position than I am to weigh those factors. But I would say that the very concerns that you're espousing, Judge Bryson, would also apply to the Supreme Court rule that started – that opened the doors to this, which was laid down in Nixon v. Fitzgerald in 1983. I really don't think so. And I've read those cases. I was actually involved in the Nixon v. Fitzgerald case. But I am – it seems to me that's very different. What you've got there is you've got the parties who are involved in litigation, have decided that they'll have a fixed amount that will be the damages in the event that one of the parties should lose. The parties are still adversarial. There was still $28,000 at issue in the Nixon case, which if Nixon had lost, he would have had to pay, and therefore both parties appear before the Supreme Court. The Havens case, $400 per person was the liquidated amount. It's just a settlement of the amount of damages. Everything else about the lawsuit went forward. In this case, it seems to me that it's very different because you've got $50,000, which is going to be paid back from the $6,500,000 settlement, as I understand it, in the event that you win any issue on appeal, any issue, including, say, the sanctions issue. That doesn't sound like a liquidated damages for infringement type claim. Well, it's almost twice the amount of the damages in the Abbey v. Crystal case on the same technology. So it's not that – that says something about where the issue is. Well, suppose it were $10,000. Would you be making the same argument? I think it really depends on the nature of the case and what the potential damages were. Here, damages reports weren't filed. But in the Abbey v. Crystal case, again, same technology, we were talking about a jury award of $28,000. So very similar. But if you were to prevail on infringement, you'd be asking for more than $50,000. You've tried that case. To be honest – And all likely. To be honest with you, I don't know if that's the case or not, because the issue would be which tags in the United States – and there's also a patent exhaustion licensing defense here. Can I come back just for a second to the finality issue? That sounds to me as if what this conversation is about mootness. Yeah, I – thank you. I wanted to get back. Yeah, we've elided from finality into mootness. So on either – if the case is moot, you're out of luck, and if there's no final judgment, you're out of luck here. Let me ask you for a moment about the sanctions. Our case law, VIEW Engineering Robotic, says that the sanctions order isn't final until the sanction is actually made. Here, there was no monetary – there's been no determination that there was harm, for example. And in order for a discovery sanction to bite, it has to be – there has to be a showing of harm. So I'm concerned that there's an absence of finality as to that issue as well. Can you speak to that? Yes, Your Honor, a couple of points. One, actually the reason why – and the basis for our appeal on the sanctions issue is that there was no finding of harm. So in a sense, I agree. But I don't know that that in and of itself would prevent an appeal. That was simply a gap, in our view, in the lower court's determination. Don't you read the previous judge's ruling on the sanctions issue to be that they're parking that until a further time when one can ascertain whether there was harm? I think that is a reasonable reading of that order. If I were to read it that way, then wouldn't there be an absence of finality? I think that you have to look at the entire circumstances and what happened after that. What happened after that was the case was moved to a new judge. The judge lifted the stay. The judge went ahead with full claim construction. And then at the end of the day, entered a final order stating explicitly that this issue was right for appeal. And then the parties, again, have a settlement structure that depends on this order. So in effect, there is some sanctions amount that is out there that the parties have agreed to dispute between them as determinative. And you're disputing the merits of whether or not there was misconduct in connection with the discovery. Right. But unlike the view… Isn't that a piece of the issue? Unlike view engineering and some of the other cases that you're talking about, those cases are cases in which absolutely there was another track that had yet to be completed to find a monetary sanction. Here, we're talking about finality because of the nature of the settlement agreement and because of the judge's order below. There's also another… It's a little bit like your argument on the act of conduct. It is very similar. It's similar. It's very similar. The other basis that I think the court could find jurisdiction using is the fact that the court has also, in cases, found that sanctions orders, which amounts to reprimands, are appealable. You're talking about the precision metals case, I take it. Yes, Your Honor. That case, though, the court was pretty careful. Judge Friedman was careful to hem in the scope of that rule, which is not the rule in every circuit, as you probably know. And what he said, if I recall, you can correct me if my recollection of the case is incorrect. But the gist of what he said is if there is a formal reprimand of an attorney, the kind of reprimand that the attorney has to report to the bar and so forth, that the sanction is crystallized at that point in a form that is sufficiently formal and final that it's something that we will entertain an appeal on. Assuming that the judge has said I have no intention of imposing a monetary sanction, this is the last thing that's going to happen. It seems to me this case is distinguishable from that one in several respects. Number one, there wasn't an announcement of a formal reprimand of somebody who has to report to the bar. The attorneys aren't even here, so they're not in the case. The only party that's in the case is that. The second point, it seems to me, is that it was anticipated that there would be a monetary sanction. The third point is they anticipated that there would be further proceedings to determine the amount of the monetary sanction. Precision metals, therefore, seems to me to have very little to do with this case. So in response to that, Your Honor, first of all, in this case, there was a finding that Abbott was 80 percent responsible, 80 percent liable. So in a sense, there was a finding, although there wasn't a dollar amount put on that. Secondly, this was a very formal – But that is subject, I take it, to the determination as to whether there's been prejudice. Absolutely. Which determination has not been made. That's right. And therefore, 80 percent of zero is still zero. That's – your math is right. But in – I'm sorry. No, go ahead. I'm sorry. But again, this case is different because of the way we reached finality. I think that that has to be considered here. And also, although it's correct this is not an attorney reprimand, it is analogous in the sense that there was a formal proceeding. There was discovery. There was an order to show cause. There were detailed findings of fact, a finding that this party was 80 percent responsible. And it's absolutely an order that's out there that is a cloud hanging over this party. But you're not arguing representation – your reputational harm to your corporation, are you? I mean, that's what's driving precision is the concern about the impact on Ms. Walser of what had happened. For example, if Allflex were here complaining, Allflex might – if they chose to tell us that it had notified its carrier, for example, it might be able to make an argument of having been stumped in the nature that it happened in precision. But I don't see that the corporation has the standing to make that argument. May I reply? Yes. In the context of this case and this industry, there's been a number of patent cases in the RFID industry involving this party. There was an inequitable conduct finding before in the Texas case. I think that it would be burying our heads in the sand if we thought that those rulings didn't have some reputational impact to further cases that might be filed between this party and other parties, whether this party's plaintiff or defendant down the road. And so I do think that that order – Yeah, but I'm not certain that that bites on the sanctions issue. In terms of – it struck me, I was asking myself while you were here, this no-doubt worry about collateral impact in the future in other cases of some of these rulings that have been made you'd like to get rid of. Right. So that – the impact of the sting to your client seems to me to be genuine on that point, but I don't see it in the same way in the sanction setting trying to move your client into a precision metals posture. Yeah. We don't want to waste any more time talking about that. Let me just see where I'm coming from. Yes, sir. Anything else? Mr. Taylor, you've been questioned extensively on jurisdiction. I'll give you two minutes to address the merits. Okay. Thank you, Your Honor. Basically, below, the court overemphasized a form over substance. So, for example, she took the term data, and she took that term, even though data is mentioned in the claims only in the context of alterable data and unalterable data, she took that term, and she read in further requirements from the specification. She also very rigidly determined that EEPROM, which can be locked, portions can be locked, could not, as a matter of fact, be an equivalent to ROM memory. And that we find to be overly rigid. It's a finding of fact. She really ignored our function, way, result, evidence, and really her distinctions were upstream from the memory structures that are shown in Figure 1. She was talking about other elements, really, in distinguishing these structures, like error interfaces, which has more to do with the coil between the reader and the tag than the memory itself. She ignored that mask memory is memory, or mask ROM is ROM, and we cite to treatises that say that. So the mask memory is the first ROM. There was ROM, and then PROM, and then EPROM, and then EEPROM. The only difference is mask was not programmable, so there's no P. And she said that mask could not be memory. That just really makes no sense. It contains ones and zeros. The only difference between that and other types of memory is that it's hardwired. It performs a function rather than containing information in the colloquial sense of information, but your argument is that that's a distinction without a difference because it's data either way. Everything performs a function in the microelectronics world when you get to that level. I understand. Can I ask one question to come back to the finality-slash-mootness discussion, which occupied most of our time here today? Assume for purposes of argument that we found the appeal sustainable here, and, for example, we ruled that at least with some of the summary judgments of non-infringement, the trial judge was wrong, and the trial judge incorrectly analyzed the materiality aspect in the case. And so we then send the case back. What's supposed to happen? For example, would there be a trial on infringement, and would there be further legal proceedings on an act of conduct? No. What we're asking for in this appeal is reversal or vacation of the order below because that's the only thing that the settlement agreement has. That's because the nature of the settlement agreement in the case is dismissed. Yes, Your Honor. Thank you. Mr. Taylor will take the case under revisal.